## THE MEDEA.

### (District Court, N. D. California. June 30, 1909.)

### No. 13,727.

1. SHIPPING (§ 132*)—DAMAGE TO CARGO—SEAWORTHINESS OF VESSEL—EVIDENCE.

 Evidence considered in an action to recover for damage by sea water to a cargo of cement on a voyage from Sweden to San Francisco around Cape Horn, and *held* not to sustain the claim of libelant that the ship was rendered unseaworthy by improper stowage, but to sustain the contention of claimant that the damage was caused by perils of the sea, within the exception in the bill of lading.

 [Ed. Note.—For other cases, see Shipping, Dec. Dig. § 132.*

 Loss by perils of the sea, see notes to The Dunbritton, 19 C. C. A. 465: Southerland-Innes Co. v. Thynas, 64 C. C. A. 118.]

2. EVIDENCE (§ 574*)—OPINIONS—WEIGHT.

 The testimony of credible witnesses, who were on the ship. that she did not in fact behave as a stiff ship during her voyage, is entitled to more weight than the opinions of expert witnesses to the contrary, based upon the manner in which the vessel's cargo was stowed.

 [Ed. Note.—For other cases, see Evidence, Dec. Dig. § 574.*]

In Admiralty. Action by Henry Lund and others against the bark Medea to recover for damage to cargo. Libel dismissed.

McClanahan & Derby, for libelants.

Frank & Mansfield, for respondent.

DE HAVEN, District Judge. This is a libel against the Swedish bark Medea, to recover damages alleged to have been sustained by reason of damage received by a cargo of cement carried by that vessel, for libelants, on a voyage from the port of Linham, Sweden, to San

Francisco, via Cape Horn. The libel alleges that the damage resulted from "the unseaworthiness of said vessel and/or from the improper and bad stowage of said cargo of merchandise" on board the said vessel, and in this connection the libel further alleges that said merchandise was so stowed "that the decks of said bark were opened, and leaked, and that salt water came through said decks onto the said merchandise," thus causing the damage sued for. The allegations of the libel are put in issue by the answer, and in addition thereto it is alleged in the answer that the damage complained of "was caused by the perils of the sea," for which the ship, under the bill of lading, would not be liable.

1. The only question for decision upon the evidence is whether or not the cargo, carried by the Medea, was distributed in such a manner as to make her seaworthy; the contention of the libelants being that it was not, and that by reason thereof the vessel was rendered stiff and unable to easily ride the seas which she might have been reasonably expected to encounter, and which she in fact did encounter, upon the voyage. The evidence shows that the cargo, carried by the Medea, consisted of cement, having a total weight of 1,446 tons and a fraction; that besides this there were 343 tons and a fraction of iron, 853 tons and a fraction of cement, and the remainder, 230 tons and a fraction, consisted of bottles, sardines, and other miscellaneous cargo. The iron was stowed in the lower hold, and all of the cement, except about 160 tons, stowed between-decks. There is some conflict in the evidence as to the weight of the cargo stowed between-decks. The captain of the Medea estimated the weight there stowed at 300 tons, and the evidence of the stevedores, who loaded her, was that there were 334 tons. The witnesses for libelant varied in their estimates from 226 to 266 tons in the between-decks.

The argument, upon the part of the libelant, is that the weather encountered by the Medea upon the voyage was not unusually severe; that it was not such as would have caused the seams of the decks to leak if the cargo had been properly distributed; and in support of the claim that the vessel was rendered unseaworthy by improper stowage the libelant produced a number of expert witnesses, who testified in substance that she was rendered stiff by the manner in which she was stowed, and as a consequence could not roll easily in the sea, and that her rolling would necessarily be sharp and jerky, thus increasing the strain upon her decks. One of the witnesses gave it as his opinion that at least 23 per cent. of the cargo in weight should have been stowed between-decks, another 25 per cent., and another 30 per cent.; but most of them expressed the opinion that one-third of her cargo in weight should have been stowed between-decks. On the other hand, the evidence of the master and mate was to the effect that the Medea was a very tender ship, and this fact is not disputed; and they further testified that upon the voyage in question she rolled easily at all times, and did not behave as a stiff ship.

The master of the Medea has had an experience of 19 years as master, and for 10 or 11 years as mate, and he testified to the effect that the Medea was loaded under his supervision, and that in his judgment the stowage was proper. The evidence shows that the Medea

left Linham, Sweden, on the 31st of January; that she proceeded on her voyage for about one month, during which time she encountered heavy storms and shipped more or less water upon her decks, and then returned to a port in Norway for the purpose of setting up her rigging, which had become slack. She had met with heavy storms, but had shown no stiffness, and no change was made in her stowage when she reached Norway. After leaving Norway she again proceeded upon her voyage, meeting with no unusually bad weather until near Staten Island, where she ran into heavy gales in rounding Cape Horn. She was about five weeks in rounding that cape, and made during that time not to exceed 200 miles. During these heavy storms the ship rolled a great deal, and shipped a large amount of water.

In my opinion the storms encountered by the Medea were of sufficient violence to strain the decks of a seaworthy ship, and after a careful consideration of all the evidence my conclusion is that the vessel was not unseaworthy when she entered upon her voyage, and the leakage of water through her decks, and the consequent damage to her cargo, should be regarded as caused by perils of the sea. The only evidence tending to show unseaworthiness of the vessel is that of the expert witnesses, to the effect that in their opinion she did not have sufficient weight of cargo between decks, that as stowed she was necessarily stiff, and that in this condition there was undue strain upon the decks, causing them to leak. Opposed to the opinion of these witnesses there is the undisputed fact that the Medea was a tender ship, and the direct testimony of the master and mate that she did not behave as a stiff ship during the voyage. Whether a ship is in fact stiff—that is, whether or not she behaves as a stiff ship—in a heavy sea, or whether she rolls easily, like a vessel properly trimmed, is a pure question of fact; and in my judgment the testimony of credible witnesses, who know how the Medea in fact behaved upon the voyage in question, is entitled to greater weight than that of witnesses who simply give their opinion that the cargo was so distributed that she must have acted like a stiff ship. If she had been in fact stiff, her master must have known it before the vessel returned to Norway, and it is not to be supposed that in that event he would have failed to have some of the cargo removed from the lower hold to between-decks, so as to give the vessel a better trim, before starting upon a long voyage around Cape Horn, a voyage upon which it was reasonable to expect the vessel would encounter severe storms and heavy seas.

The libel will be dismissed, with costs.